UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | Criminal No. 10-10-GFVT |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| MICHAEL D. LEMAN, et al., | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Beginning on March 5, 2012, Defendants stood trial for conspiracy to distribute oxycodone and methadone, and conspiracy to money launder. The trial lasted roughly a month, and the jury found Defendants guilty on both counts. Subsequently, Defendants filed their post-verdict motions for judgment of acquittal notwithstanding the verdict and new trial under the framework of Rules 29 and 33 of the Federal Rules of Criminal Procedure.

**I**

After a jury has reached a verdict, a defendant is permitted to file a motion for judgment of acquittal challenging the sufficiency of the evidence pursuant to Federal Rule of Criminal Procedure 29. Fed.R.Crim.P. 29(a), (c). "A defendant making such a challenge bears a very heavy burden." *United States v. Tocco*, 200 F.3d 401, 424 (6th Cir.2000). When undertaking such review, the court "must decide whether, after viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir.2007). Moreover, courts are precluded

1

from weighing the evidence, considering witness credibility, or substituting its judgment for that of the jury. *United States v. Chavis*, 296 F.3d 450, 455 (6th Cir.2002). "A judgment is reversed on insufficiency-of-the-evidence grounds 'only if [the] judgment is not supported by substantial and competent evidence upon the record as a whole.' " *Gardner*, 488 F.3d at 710 (quoting *United States v. Barnett,* 398 F.3d 516, 522 (6th Cir.2005); *United States v. Beddow,* 957 F.2d 1330, 1334 (6th Cir.1992)).

Rule 33 establishes that "[u]pon the defendant's motion, [a district] court may vacate any judgment and grant a new trial if the interest of justice so requires." *U.S. v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010); *see also* Fed.R.Crim.P. 33(a). The phrase "interest[ ] of justice" is not defined within the rule, and courts have had marginal success in trying to "generalize its meaning." *Id.* (quoting *United States v. Kuzniar,* 881 F.2d 466, 470 (7th Cir.1989)). Still, several themes remain constant in the Rule 33 context. The conventional use of a Rule 33 motion "is to seek a new trial on the ground that 'the [jury's] verdict was against the manifest weight of the evidence.' " *Id.* (quoting *United States v. Crumb,* 187 Fed.Appx 532, 536 (6th Cir.2006)); *see also United States v. Legette-Bey,* 147 Fed.App'x 474, 486 (6th Cir.2005); *United States v. Graham,* 125 Fed.App'x 624, 628 (6th Cir.2005); *United States v. Solorio,* 337 F.3d 580, 589 n. 6 (6th Cir.2003). Finally, "[w]ith a Rule 33(a) motion for new trial on the ground that the verdict is against the weight of the evidence, the power of a court is much broader because a court may weigh the evidence and consider the credibility of the witnesses." *U.S. v. Dimora*, 879 F.Supp.2d 718, 724 (N.D. Ohio 2012).

# II

## A

The Defendants begin with the rather unremarkable assertion that a witness at trial was not telling the truth. According to Defendants, Tonia Snook manufactured several statements forming what they characterize as the "Big Lie." [R. 178-1, at 3.] The key question, however, is whether the testimony was offered by the prosecution knowing that it was false, a far more significant and troubling assertion.

The first four portions of testimony that were allegedly fabricated occurred during direct examination. First, they proffer that she credited herself for the June 8, 2005 discovery of fraudulent MRIs in the files of the Kentucky patients at the Philadelphia clinic. Defendants contend that based on Claxton Crowder's testimony, then a doctor at the Philadelphia clinic, he discovered the fraudulent documents. [178-1, at 4.]

Second, they assert that Snook manufactured a series of brief conversations involving Crowder, Leman, and herself. In the first conversation, she told Leman that she had discovered forged documents, and according to her, upon hearing this information he instructed her not to worry about them. [R. 178-1, at 5.] During the second conversation, Snook testified about a discussion between her and Crowder in which she advised that Leman instructed them not to worry about forged prescriptions. [*Id.*] The third conversation recounted by Snook regarded a speakerphone exchange between Crowder and Leman. Snook testified that Leman instructed Crowder to "take the G.D. . . MRIs and write the prescriptions or you won't get paid." [*Id.*] In the fourth conversation, Snook recalled calling Leman to inform him that Dr. Crowder had left the office. [*Id.*] In the fifth conversation occurring 30 minutes after the prior phone call,

Snook recounted that she and Leman talked again and that he informed her that "Dr. Rowland would write the prescriptions and fax them over" from Philadelphia. [*Id.*]

Third, Defendants assert that Snook manufactured testimony regarding Dr. Rowland's participation in the fabrication of forged prescriptions. According to Snook, Dr. Rowland faxed and signed off on prescriptions for patients whom he did not examine. [*Id.* at 6.] Defendants claim that Dr. Rowland denied that this occurred, and thus leads to only one conclusion: Snook lied. [*Id.*] They also argue that Snook lied about the source and origin of Brenda Goble's prescriptions. [*Id.* at 9.] They claim that Snook forged Brenda Goble's prescriptions by altering the prescriptions written for her dad, Larry Goble. [*Id.*]

Finally, Defendants proffer that on cross-examination, Snook lied under oath about forging MRIs. [*Id.*] Defendants claim that based on the testimony of Larry Goble, Brenda Goble, William Marsillet, Crowder, and Weiss, it is clear that Snook perjured herself. Moreover, they claim that the relevant medical records prove that Snook is not telling the truth. [*Id.* at 10.]

The government counters against Defendants protestations by noting that the Court provided them with an opportunity to recall Snook to inquire about, among other things, the striking similarities between Larry and Brenda Goble's prescriptions. [*Id.* at 5.] It asserts that because Defendants did not take advantage of this opportunity, they have no indisputable evidence of perjury. [*Id.*]

Under neither the Rule 29 nor Rule 33 framework are Defendants entitled to the relief they seek. "[T]he knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have

affected the judgment of the jury" *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). To succeed, the defendant "must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." *Id.* Further, to show falsity, defendants must demonstrate that the testimony was "actually perjured," whereas "mere inconsistencies are not sufficient to establish knowing use of false testimony." *Id.* The statement must be "indisputably false," instead of simply misleading. *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000); *Akrawi v. Booker*, 572 F.3d 252, 265 (6th Cir. 2009). To that point, "[a] false statement is material ... and '[a] new trial is required[,] if the false testimony could in any reasonable likelihood have affected the judgment of the jury.' " *Brooks v. Tennessee,* 626 F.3d 878, 895 (quoting *Giglio v.United States,* 405 U.S. 150, 154 (1972)).

Defendants have failed to establish that Snook's statements were indisputably false. Notably, their claim is not cognizable under Rule 29 because courts are precluded from weighing the evidence, considering witness credibility, or substituting its judgment for that of the jury. *United States v. Chavis*, 296 F.3d 450, 455 (6th Cir.2002). As to Rule 33, Defendants' arguments are also unpersuasive because they have not established that Snook proffered indisputably false testimony.

The first prong of the *Coe* analysis must be satisfied with a showing that Snook's statement was indisputably false and not a mere inconsistency. *Rosencratz*, 568 F.3d at 585 (citing *Coe*, 161 F.3d at 343). Although Defendants have expanded their argument and provided more detail regarding the alleged manufactured statements, the argument, that Snook perjured herself on the witness stand, has been previously raised. In an order dated March 23, 2012, their Motion to Strike Tonya Snook's Testimony in Whole or in

Part based on alleged perjured statements was denied. [R. 160.] There, this Court noted that Sixth Circuit precedent placed the burden "on the defendants to show that the testimony was actually false, and mere inconsistencies in testimony by government witnesses does not establish knowing use of false testimony." [*Id.* at 4 (citing *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989); *see also United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987)).] It was determined there that Defendants did not meet their burden of establishing that Snook actually committed perjury [R. 160, at 4], and the same is true here.

Defendants were permitted to re-examine Snook at trial, but opted not to because they believe that "the presumption of innocence requires the defense to prove nothing and the burden of proof is on the government to establish guilt beyond reasonable doubt." [R. 178-1 at 15.] To support this proposition they cite *Napue v. People of the State of Illinois*, 360 U.S. 264 (1959). In that case, it was conceded by the prosecution that its principal witness falsely testified that he would not receive a sentence reduction recommendation. *Id.* at 267. In agreement with the holding in *Napue*, this Court does not dispute that the government has an inherent responsibility to correct any indisputably false testimony. *Id.* at 270 (*People v. Savvides*¸ 136 N.E.2d 853, 854-55 (N.Y. 1956)). Nonetheless, as this Court reads that decision, the Supreme Court's holding applies to "indisputably false" testimony. There, the prosecution did not contest the finding that the principal witness had indeed falsely testified at trial. *Id.* at 267 (The Illinois Supreme Court "found, contrary to the trial court, that the attorney had promised Hamer consideration if he would testify at petitioner's trial, a finding which the State does not contest here.").

6

Here, because Defendant's decided not to re-examine Snook, they rely on inferences drawn based on documents and testimony that is incongruent with Snook's recollection of events. They proffer with respect to the forgery of prescriptions and MRIs that "[t]he testimony of Larry Goble, Brenda Goble, William Marsillet, Dr. Crowder, and Dr. Weiss, along with an examination of the relevant medical records, proves that Snook was lying." [R. 178-1, at 10.]

Without question, there are inconsistencies in the testimony of the referenced witnesses. Moreover, the Brenda and Larry Goble prescriptions do bear a striking resemblance to one another. Nevertheless, these occurrences do not satisfy the indisputably false prong under the *Coe* analysis. As noted in this Circuit, "contradictory accounts amount only to 'mere inconsistencies,' " *Rosencrantz*, 568 F.3d at 587 (quoting *Coe*, 161 F.3d at 343)), and "mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony," *United States v. Scarborough*, 43 F.3d 1021, 1026 (6th Cir. 1994). Thus, Defendants have failed to establish that Snook's statements were indisputably false.[1] Without that finding, the Court need not turn to whether the conviction is against the weight of the evidence.

**B**

Next, Defendants take issue with what they believe are two flawed jury instructions that significantly impacted the jury's decision to convict. Defendants are not entitled to Rule 29 or Rule 33 relief here either.

---

[1] Alternatively, this analysis fails because, as was determined in this Court's March 23 order, Defendants have failed to show that the prosecution elicited testimony that it knew was false. [*See* R. 160, at 4.] By failing to establish this prong of the analysis, Defendants' argument is doomed.

**1**

Defendants do not believe that sufficient evidence existed for the Court to instruct on deliberate ignorance. [R. 178-1, at 22.] Specifically, they inquire as to whether a deliberate ignorance instruction can be submitted to the jury when direct evidence of Defendants' knowledge is based upon Snook's perjured testimony. [*Id.* at 23.]

The government contends that a host of witnesses, Donald Auzine, Crowder, Weiss, Destiny Smallwood, Stanley Naramore, Dr. Poget, and some of Defendants' own witnesses "provided testimony that discussed Leman's knowledge of the operations of the clinics." [R. 190, at 7.] Moreover, it opines that the instruction was not given "indiscriminately" in accordance with the teaching of *Mari v. United States*, 47 F.3d 782, 787 (6th Cir. 1995). Therefore, the government concludes that the jury instruction on deliberate ignorance was properly given to the jury. [*Id.* at 10.]

Review of the case law in this circuit supports this Court's decision to submit the instruction to the jury. "A court's choice of jury instructions is reviewed for abuse of discretion. *United States v. Ross,* 502 F.3d 521, 528 (6th Cir.2007). "A trial court has broad discretion in drafting jury instructions and does not abuse its discretion unless the jury charge 'fails accurately to reflect the law.' " *United States v. Beaty*, 245 F.3d 617, 621 (6th Cir. 2001) (quoting *United States v. Layne*, 192 F.3d 5566, 574 (6th Cir. 1999). To show that the district court abused its discretion, the defendant must show that 'the instructions, viewed as a whole, were confusing, misleading, or prejudicial.' *United States v. Harrod,* 168 F.3d 887, 892 (6th Cir.1999)." *United States v. Freeman*, 299 F. App'x 556, 558 (6th Cir. 2008). "No single provision of the jury charge may be viewed

in isolation, rather, the charge must be considered as a whole." *Beaty*, 245 F.3d at 621-22 (citing *United States v. Lee*, 991 F.2d 343, 350 (6th Cir. 1993)).

First, the Defendants challenge to the instruction is based on a faulty premise. The Court does not accept, based on the evidence before it, and for the reasons stated above, that Snook perjured herself. With that said, the submission to the jury of the deliberate indifference instruction was appropriate. The pertinent instruction was included on page fourteen of the jury instructions under the "Inferring Required Mental State" heading. The relevant language reads as follows:

> Next, I want to explain something about proving a defendant's knowledge.
>
> No one can avoid responsibility for a crime by deliberately ignoring the obvious. If you are convinced that a defendant deliberately ignored a high probability that drugs were being distributed illegally or money was being laundered, then you may find that he knew that drugs were being distributed illegally or money was being laundered.
>
> But to find this, you must be convinced beyond a reasonable doubt that the defendant was aware of a high probability that drugs were being illegally distributed or money was being laundered, and that the defendant deliberately closed his eyes to what was obvious. Carelessness or negligence on his part is not the same as knowledge, and it is not enough to convict. This, of course, is all for you to decide.

[R. 164, at 14.] This part of the instruction tracks the language recommended in the Sixth Circuit Pattern Jury Instructions. Pattern Criminal Jury Instructions for the Sixth Circuit § 2.09.

By strictly adhering to the wording of the Sixth Circuit Pattern Jury Instruction neither a new trial nor a judgment of acquittal is appropriate. When defendants claim that a district court erred by giving a deliberate ignorance instruction without sufficient evidence to justify its inclusion, *United States v. Mari*, 47 F.3d 782 (6th Cir. 1995), is controlling. There, the Sixth Circuit determined that "when a district court gives a

9

deliberate ignorance instruction that does not misstate the law but is unsupported by sufficient evidence, it is, at most, harmless error. *Id.* at 786; *Beaty*, 245 F.3d at 622. The Sixth Circuit has assigned it harmless error status because "even if there had been insufficient evidence to support a deliberate ignorance instruction, [the court] must assume that the jury followed the jury charge and did not convict on the grounds of deliberate ignorance." *United States v. Monus*, 128 F.3d 376, 390-91 (6th Cir. 1997). This Court did not misstate the law concerning deliberate ignorance, and the instructions, viewed as a whole, were not confusing, misleading, or prejudicial.

Besides, there was sufficient evidence in the form of Weiss' testimony indicating that Leman knew that the business strategy adopted by the clinics might expose them to criminal prosecution. [R. 146, at 27-28.][2] The instruction clearly accounts for the situation where knowledge can be inferred, but "does not authorize a conviction based on negligent behavior." *United States v. Gullet*, 713 F.2d 1203, 1212 (6th Cir. 1983). Rather, it "prevents a criminal defendant from escaping conviction merely by deliberately closing his eyes to the obvious risk that he is engaging in unlawful conduct." *Id.* Thus, the jury having heard Weiss' testimony could have determined that Defendants, Leman specifically, turned a blind eye to the criminal conduct occurring at the clinics. Consequently, relief under the Rule 29 insufficiency-of-the-evidence analysis is inappropriate.

---

[2] While testifying, Weiss recounted a discussion between himself and Leman in which Leman sought to ease some of Weiss' concerns by assuring him that he "really [did not] have to be concerned about what we're doing here because it's going to go one of two ways. Either they're going to have to put every doctor who writes pain prescriptions in jail, and, therefore, nobody gets . . . that needs pain medication will ever get it, or they're going to have to back off. And they're certainly going to back off." [R. 146, at 28.]

10

Moreover, Rule 33 relief is also improper because there has been no finding that Snook committed perjury, and based on the standard applied to harmless error instructions, the deliberate indifference instruction was properly submitted to the jury. Hence, the accusation that the verdict was against the great weight of the evidence fails.

**2**

Defendants also challenge the money laundering instruction. They assert that plain error exists in the instruction of money laundering and it requires the reversal of the conviction on Count two. The pertinent portion of the instruction highlighted by Defendants reads as follows:

> The phrase "knew that the property involved in a financial transaction represents the proceeds of some form of unlawful activity" means that the defendant knew the property involved in the transaction represented the proceeds of some form, though not necessarily which form, of activity that constitutes a felony under state or federal law. *The Government does not have to prove that the defendant knew the property involved represented proceeds of some form of unlawful activity*.

[R. 164, at 20 (italics added).] This portion of the money laundering instruction was included in the defined terms section of the instruction. The last sentence of the definition was incorrectly stated. As recommended in the Sixth Circuit Pattern Jury Instructions, it should read that "[The government does not have to prove the defendant knew the property involved represented proceeds of a felony as long as he knew the property involved represented proceeds of some form of unlawful activity.]" Sixth Circuit Pattern Jury Instruction 11.01 (brackets included in the original).

Defendants argue that "deviation from the standard instruction allowed the jury to convict [] the defendants without knowledge that the property involved represented proceeds of some form of unlawful activity." [*Id.* at 25.] Further, they assert that "[t]his

11

variation from the law constituted plain error, misstates the knowledge element of the offense and requires post-verdict relief." [*Id.*]

The government contends that the argument proffered by Defendants is not supported by the instruction submitted to the jury. [*Id.* at 10.] "By a plain reading of the instruction the jury was required to find that each Defendant knew that the property involved in the transaction represented the proceeds of some form, but not necessarily which form, of activity that constitutes a felony." [*Id.*] The government points out that Defendants do not cite any case law or statutory authority for their position, and consequently, "failed to meet their burden in regard to this money laundering jury instruction matter." [*Id.*]

The flawed portion of the money laundering instruction does not in and of itself trigger the need for judgment notwithstanding the verdict under Rule 29 or a new trial under Rule 33. " 'In determining the adequacy of a jury instruction, the instruction must be viewed in its entirety, and a misstatement in one part of the charge does not require reversal if elsewhere in the instruction the correct information is conveyed to the jury in a clear and concise manner.' " *United States v. Waldren*, 431 F. App'x 374, 377 (6th Cir. 2011) *cert. denied*, 132 S. Ct. 499 (2011) (quoting *United States v. Nelson,* 27 F.3d 199, 202 (6th Cir.1994)).

Without question, the last sentence of the instruction was incorrectly stated, but "[d]etermining that the district court erred . . . does not require an automatic reversal." *United States v. Kuehne*, 547 F.3d 667, 681 (6th Cir. 2008) (citing *Neder v. United States*, 527 U.S. 1, 8, 12-13 (1999)). Despite the misstatement, the prior sentence of that definition accurately defines the phrase. There, it states that "[t]he phrase 'knew that the

12

property involved in a financial transaction represents the proceeds of some form of unlawful activity' means that the defendant knew the property involved in the transaction represented the proceeds of some form, though not necessarily which form, of activity that constitutes a felony under state or federal law." [R. 164, at 20.] That language precisely tracks the language of Pattern Jury Instruction § 11.01. Review of the entire instruction with respect to the money laundering charge shows that it "provide[d] the jury with a sound basis in law with which to reach a conclusion." *United States v. Wells*, 211 F.3d 988, 1002 (6th Cir. 2000).

Moreover, there was sufficient evidence to find Defendants guilty with respect to the second count of the indictment. In viewing the evidence in a light most favorable to the government, *Gardner*, 488 F.3d at 710, it is highly unlikely the jury would have found Defendants guilty of the predicate offense, conspiracy to distribute oxycodone and methadone in violation of 21 U.S.C. § 846 charged in Count one, but not find beyond reasonable doubt that they were also guilty of the conspiracy to commit money laundering resulting from the distribution of those controlled substances. *See Hillard v. United States*, 157 F.3d 444, 446 (6th Cir. 1998) ("Although we find that the jury instructions were erroneous, we conclude that there was sufficient evidence for a properly instructed jury to find that [the defendant] carried his firearm during and in relation to a drug trafficking crime.").

## C

Defendants also believe a judgment of acquittal or a new trial is appropriate given the absence of instructions defining "proceeds" as "gross receipts" or "profits." The

13

Defendants argue that the more defendant friendly definition "profits" should have been included in the instructions. This argument is largely academic.

In *United States v. Santos*, 553 U.S. 507 (2008), divergent views formed the basis of three different interpretations of the term "proceeds." Four justices, the plurality, opted for a more favorable definition for defendants in which "proceeds" means "profits" in all cases. *Id.* at 513-14. To arrive at this decision, the Supreme Court applied the rule of lenity. *Id.* at 514. The Supreme Court opined that applying the rule of lenity was appropriate because defining proceeds as gross receipts would create a merger problem for a number of predicate offenses under § 1956. *Id.* A charge of money laundering can sometimes "radically increase " the statutory maximum sentence of the predicate offense when charged in the same criminal indictment. *Id.* at 516-17. The Supreme Court noted that operating an illegal lottery had a statutory maximum of five years, while a § 1956 conviction raised the statutory maximum to 20 years. *Id.* at 516. Conversely, another four Justices, writing in dissent, reached a different conclusion, and held that "proceeds" means the total amount of revenue made, the "gross receipts." Id. at 531. Justice Stevens held separately and concluded that "proceeds" means "profits" for some predicate crimes and "receipts" for others. *Id.* at 525.

This circuit in *United States v. Kratt*, 579 F.3d 558 (6th Cir. 2009) adopted Justice Steven's "interpretive approach." *Id.* at 562. Thus, the dominant consideration here is whether merging the money-laundering count with the predicate offense will drastically increase the statutory maximum sentence for Defendants. *See id.* at 562-63. Here, the predicate offense for which Defendants were charged under Count one was the conspiracy to distribute oxycodone and methadone in violation of 21 U.S.C. § 846.

Count two is the money laundering offense. Both include the same statutory maximum sentence, thus obviating the need to define "proceeds" differently. Consequently, Defendants Rule 29 motion must fail because this Circuit has approved of the "gross receipts" definition in this context where there is no merger issue thereby negating any concerns that the jury's verdict was based on insufficient evidence . Further, the Rule 33 motion fails because given the appropriateness of the definition the interest of justice does not compel the commencement of a new trial.

### D

As to their final challenge, Defendants' postulate that because Urgent Care Cincinnati ceased to exist on March 4, 2009, prior to the indictment and trial, the verdict of guilty as to Counts one and two against it are void. [*Id.*] Defendants conclude that "[a] corporation that is not in existence cannot be the subject of a verdict of guilty nor an indictment the same as an ordinary person who has died prior to the indictment or the verdict." [*Id.*] To support their position, Defendants proffer Exhibit G-7, State of Ohio certificate number 1607520. That document is dated March 4, 2009, and signed by the then-Ohio Secretary of State, Jennifer Brunner, noting that the status of the charter of corporation for Urgent Care of Cincinnati is "CANCELLATION, FAILURE TO MAINTAIN AGENT." [*Id.*] The government argues that the "substantial continuity" test applies, and that based on its application, Urgent Care of Cincinnati was properly indicted. [*Id.*]

The government's reliance on the substantial continuity test set forth in *Atherton* is misplaced. According to Sixth Circuit case law, "[t]he substantial continuity test has gained widespread acceptance only in the narrow areas of labor law, employment

15

discrimination law, and pension benefit litigation." *Mickowski v. Visi-Trak Worldwide, LLC*, 415 F.3d 501, 515 (6th Cir. 2005).

Rather, the proper analysis to undertake is set forth in *Melrose Distilleries, Inc. v. United States*, 359 U.S. 271 (1959). There, the Supreme Court held that "[t]he question whether a corporation 'exists' for any purpose is thus determined by reference to state law." *Id.* at 272. Thus, the relevant consideration here is whether the laws of Ohio under which the Cincinnati clinic was incorporated disallow the charging of an indictment against a dissolved entity.

Review of the pertinent statutory provisions clearly indicates that the Ohio Secretary of State's cancellation of Urgent Care of Cincinnati did not affect the prosecution against it. Section 1701.88 of the Ohio Revised Code states that "[t]he voluntary dissolution of a corporation, cancellation of the articles of a corporation, expiration of the period of existence of a corporation . . . shall not eliminate or impair any remedy available to or against the corporation…" if such action is instituted "before five years after the date of the dissolution." R.C. § 1701.88(B).

Further, "[a]ny action, suit, or proceeding begun by or against the corporation within the time limits established in division (B) of this section shall not abate, and the corporation shall, solely for the purpose of such action, suit, or proceeding, be continued as a body corporate beyond the five-year period and until any judgments, orders, or decrees are fully executed, without the necessity for any court order required under division (A) of this section." R.C. § 1701.88(C).

Here, the Ohio Secretary of State cancelled the Urgent Care of Cincinnati corporation on March 9, 2009. This criminal action commenced against Urgent Care of

16

Cincinnati once it was initially indicted on September 1, 2011, a little more than two years after the cancellation. Thus, under the plain reading of the statutory provisions, the government's prosecution against Urgent Care of Cincinnati was timely, and thus the charges and now convictions against it are not subject to dismissal based on this ground. Accordingly, relief is not appropriate under Rule 29 or Rule 33 with respect to this issue. As has already been explained, there is sufficient evidence supporting the guilty verdict and the interest of justice does not compel the commencement of a new trial.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** that the Defendants' Post-Verdict Motions for Judgment of Acquittal Under Rule 29 F.R.Cr.P. and/or Motion for New Trial Under Rule 33 of F.R.Cr.P. [R. 178] is **DENIED**.

This 30th day of April, 2013.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge